IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



AUGUSTINE SIFUENTES, §
　§
　　Petitioner, §
　§
v. § No. 4:16-CV-1010-A
　§
LORIE DAVIS, Director, §
Texas Department of Criminal §
Justice, Correctional §
Institutions Division, §
　§
　　Respondent. §

## MEMORANDUM OPINION
### and
### ORDER

This is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner, Augustine Sifuentes, a state prisoner confined in the Correctional institutions Division of the Texas Department of Criminal Justice (TDCJ), against Lorie Davis, director of TDCJ, respondent. After having considered the pleadings, state court records, and relief sought by petitioner, the court has concluded that the petition should be denied.

### I. BACKGROUND

The state court records reflect that in December 2014 petitioner was indicted in Tarrant County, Texas, Case Nos. 13491496D, 1391497D, and 1391499D, for possession of a controlled substance with intent to deliver, unlawful possession of a firearm, and theft of firearm, respectively. (01SHR 49, doc. 10-

2; 02SHR 50, doc. 10-4; 03SHR 95, doc. 10-6.[1]) The indictments for possession of a controlled substance and unlawful possession of a firearm included habitual-offender notices and the indictment for theft of a firearm included a state-jail-felony enhancement. On May 8, 2015, pursuant to plea agreements, the state waived the habitual-offender allegations and petitioner pleaded guilty to all three offenses. (01SHR 55, doc. 10-2; 02SHR 52-56, doc. 10-4; 03SHR 97-101, doc. 10-6.) In accordance with the plea agreements, the trial court sentenced petitioner to 15 years' imprisonment in each case, the sentences to run concurrently. (01SHR 56, doc. 10-2; 02SHR 57, doc. 10-4; 03SHR 102, doc. 10-6.) Petitioner did not appeal the trial court's judgments of conviction, but he did seek postconviction state habeas relief by filing three state habeas applications, one for each conviction, which were denied by the Texas Court of Criminal Appeals without written order on the findings of the trial court. (01SHR, Action Taken, doc. 10-1; 02SHR, Action Taken, doc. 10-3; 03SHR, Action Taken, doc. 10-10-54.) This federal petition followed.

## II. ISSUES

In one ground for relief, petitioner claims he received

---

[1] "01SHR" refers to the state court record in petitioner's state habeas-corpus application No. WR-84,583-01; "02SHR" refers to the state court record in his state habeas-corpus application No. WR-84,583-02; and "03SHR" refers to the state court record in his state habeas-corpus application No. WR-84,583-03.

ineffective assistance of trial counsel because counsel-

    (1)    coerced or frightened him into pleading guilty;

    (2)    failed to investigate the cases;

    (3)    failed to challenge the indictment in the theft-of-firearm case;

    (4)    refused to go to trial; and

    (5)    gave him erroneous advice and lied about the nature of the theft-of-firearm offense.

(Pet. 6, doc. 1.)

### III. RULE 5 STATEMENT

Respondent does not believe that the petition is successive, that the petition should be dismissed as untimely, or that Petitioner's claims are unexhausted. (Resp't's Answer 3, doc. 11.)

### IV. STANDARD OF REVIEW

A § 2254 habeas petition is governed by the heightened standard of review provided for by the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court or that is based on an unreasonable determination of the facts in light of the record before the state court. *Harrington v. Richter*, 562 U.S. 86, 100-01 (2011); 28 U.S.C. § 2254(d)(1)-(2). Additionally, the statute

requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. It is the petitioner's burden to rebut the presumption of correctness through clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## V. DISCUSSION

A criminal defendant has a constitutional right to the effective assistance of counsel at trial. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey*, 469 U.S. 387, 396 (1985); *Strickland v. Washington*, 466 U.S. 668, 688 (1984). To prevail on an ineffective assistance claim in the context of a guilty plea, a defendant must demonstrate that his plea was rendered unknowing or involuntary by showing that (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's deficient performance, he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 56-59 (1985); *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983); *see also Strickland*, 466 U.S. at 687. In assessing the reasonableness of counsel's representation, "counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional

4

judgment.'" *Cullen v. Pinholster,* 563 U.S. 170, 189 (2011) (quoting *Strickland,* 466 U.S. at 690).

Further, by entering a knowing, intelligent and voluntary guilty plea, a defendant waives all nonjurisdictional defects in the proceedings preceding the plea, including all claims of ineffective assistance of counsel that do not attack the voluntariness of the guilty plea. *Smith,* 711 F.2d at 682; *Bradbury v. Wainwright,* 658 F.2d 1083, 1087 (5th Cir. 1981). A guilty plea is knowing, voluntary and intelligent if done with sufficient awareness of the relevant circumstances and likely consequences surrounding the plea. *Brady v. United States,* 397 U.S. 742, 748 (1970). If a challenged guilty plea is knowing, voluntary and intelligent, it will be upheld on federal habeas review. *James v. Cain,* 56 F.3d 662, 666 (5th Cir. 1995).

In this case, counsel filed an affidavit in the state habeas proceedings addressing petitioner's claims, wherein he states (all spelling, grammatical, and/or punctuation errors are in the original):

> I understand [petitioner]'[s] complaint herein to be that I "rendered ineffective assistance of counsel" by;
>
> **1) coercing or frightening him into a plea of guilty;**
>
> **2) failing to investigate the cases;**
>
> **3) failing to "challenge" the indictment in the theft of firearm case;**

4) refusing to go to trial

5) allowing [petitioner] to plead true to a "habitual offender notice" or failing to notify him that he was pleading true to a "habitual offender notice" in cause number 1391499 (theft of firearm, a state jail felony with a second degree enhancement notice);

6) giving him "erroneous advice;" and

7) "lying" about the nature of his theft of firearm offense.

At the outset, I would note that the entirety of [petitioner]'s complaint seems to be based in generalized remorse that he pled guilty and a misunderstanding of the indictment in the theft of firearm case.

I.

1. Coercing or frightening [petitioner] into a guilty plea

I met with [petitioner] in jail, apart from court appearances, three times for a total of four hours. Additionally, Judge Westfall was generous enough to allow me to meet with [petitioner] in her courtroom to view videos associated with the cases for a total of two hours and fifteen minutes. At each of these meetings, we discussed the case reports, the evidence, and the merits of the cases, the charges, the possible sentences and the possible dispositions by way of a plea bargain. From the beginning, I told [petitioner] that I was not there to make him do anything he did not want to do. I told him that my job was to give him information and the benefit of my experience in order to help him make the best decision possible. I told him I would do whatever he instructed me to do so long as it was legal and ethical.

[Petitioner] asked me to seek a bond reduction in his cases and I did. Judge Westfall did reduce the bond in the firearm theft and possession cases and my recollection is that the total amount went from $100,000 to $65,000. I sought and obtained court approval for an investigator and employed Doug

Lambertsen a well-respected criminal investigator here in Tarrant County. [Petitioner] gave me permission to discuss the case with his mother, Mary Cantu. I spoke with Ms. Cantu on a number of occasions and I understand Doug Lambertsen spoke with her as well. Ms. Cantu reported to me that she was visiting her son in jail and/or speaking with him on the phone. On 12/15/2014 we received a plea offer 20 years and to waive the habitual offender notices in the possession and firearm possession cases and to proceed on the second degree notice in the firearm theft case.

I specifically told [petitioner] that standing alone, the firearm cases and the drug possession case were relatively weak, however, if he went to trail the cases were inextricably bound up and together they were likely enough for the state to obtain a guilty verdict. The reason I said this is because he was the last person the owner of the stolen firearms knew to be in the room with firearms and when he was arrested on the drug case, one of the stolen firearms was found in the bag with the drugs. The facts of both cases would have been placed before the fact finder.

I additionally warned [petitioner] that he may need to testify in his own defense and that if he did so he could be impeached with many of his prior convictions. I further pointed out that if he were convicted his sentence would perforce have to twenty-five years in prison *at a minimum*. I can see how this information might be frightening. I told [petitioner] at every step on the way that I would be happy to try his case. (I have tried well over 120 serious felony cases to a verdict). Ultimately [petitioner] told me that he would rather have the certainty of a fifteen year sentence over the very real possibility of a conviction and a minimum sentence if twenty-five years.

II.

**2) Failing to investigate the cases**

Aside from investigating the backgrounds of the three people in the car with the defendant at his arrest, I asked Doug Lambertsen to interview the victim in the firearm theft case, Daniel C. I understood Daniel C. to be a relative of [petitioner] and according to

7

[petitioner] the victim did not want [petitioner] to be prosecuted. There was no further investigation required. The main task was an analysis of the evidence and an evaluation of the way it would play out at trial. Aside from Daniel C. the witnesses at trial would be police officers or drug analysts.

Doug Lambertsen interviewed [petitioner], his mother and Daniel C. Doug reported the following to me:

*On December 15, 2014 I received the appointment on [petitioner]. On that date I reviewed the discovery, ran a criminal history of [petitioner] and a web search, social media, on [petitioner].*

*On December 22, 2014 I interviewed [petitioner] at jail. His explanation for having the gun and drugs was that there were two bags sitting side by side and somebody picked up the wrong bag. He stated the bag that he was found with belonged to his cousin (sic) Daniel C. and his mother could provide his contact information.*

*On January 16, 2015 I made several attempts to contact [petitioner]'s mother, Marie Cantu, before interviewing her by phone on January 16, 2015. Marie provided me the contact information of Daniel but was unable to provide the contact information on [petitioner]'s sister. Marie was to have [petitioner]'s sister call me but she never did.*

*On January 16, 2015 I contacted Daniel C. by phone and he informed me that he is an inspector for the City of Dallas and he wanted no part of [petitioner]'s currant legal issues. He wants his guns back and would not help in any way. Daniel stated that [petitioner] had a long criminal history and was not to be believed and ended the interview with "I won't help."*

### III.

**3) Failing to challenge the indictment in the theft of firearm case**

The only real way to challenge an indictment is to go to trial; this [petitioner] did not want to do as is evidenced by his freely and voluntarily given plea of

8

guilty in open court after exhaustive discussions with
me and an opportunity to view all of the evidence in
the cases. He pled guilty to the three cases and in
return received a sentence of fifteen years. That
sentence is five years less than the initial offer and
ten years less than the statutory minimum in the
firearm and drug possession cases should [petitioner]
have been found guilty, as I believed he would. I think
this complaint of failure to challenge the indictment
may be based in a misunderstanding on [petitioner]'s
part which I will further address in Sec V.

IV.

**4) Refusing to go to trial**

At no time did I ever refuse to go to trial. To the
contrary, I told [petitioner] repeatedly that if he
wanted a trial I could and would do that.

V.

**5) Allowing [petitioner] to plead true to a "habitual offender notice" or failing to notify him that he was pleading true to a "habitual offender notice" in cause number 1391499 (theft of firearm, a state jail felony with a second degree enhancement notice)**

Here [petitioner] evinces a misunderstanding or
mischaracterization of the indictment and plea in cause
1391499. This cause is a state jail felony charge of
theft of a firearm enhanced by a second degree notice
and carries a range of punishment of no less than two
and not more than twenty years in the penitentiary.
There is no habitual offender notice associated with
this case. The only habitual offender notices
associated with [petitioner] were alleged and then
later waived in cause numbers 1391496 and 1391497.
[Petitioner] also received sentences of fifteen years
in these causes and the court ordered all three
sentences to run concurrently with back time credit to
November 6, 2014.

VI.

**6) Giving [petitioner] "erroneous advice"**

Without further and more specific allegations as to the nature of the advice [petitioner] finds "erroneous" I cannot properly address this claim. Read in context, his claim appears refer to his complaint about the theft of firearm case carrying a habitual offender notice to which he pled true. As noted above in V, the notice to which he pled true was a second degree notice, not a habitual notice.

VII

**7) "Lying" about the nature of his theft of firearm offense**

Absent further specificity, undersigned Counsel cannot answer this allegation. I can say that I never lied to [petitioner].

In conclusion I would point out that [petitioner] gave a recorded, admissible statement to Detective Eubanks of the Hurst police department. In that statement he admitted his fingerprints might be on the weapon because he had handled it in the preceding four days, that he was aware that there were drugs in the laptop bag, that his fingerprints would be on the bags containing the controlled substance and that he had the laptop bag in his possession at a game room earlier on the night of his arrest. He maintained that the laptop, the drugs and the weapon were actually the backseat passenger's (Kelly) but that she would say they were his. I believe that this statement coupled with the evidence in the police report would have resulted in a pretty quick guilty verdict. As to the theft of firearm case, I told [petitioner] that this case was the weakest but that if we went to trial the state would be going on one of the stronger habitual cases anyway. I asked the state to dismiss the theft of firearm case in return for guilty pleas on the two other case but they refused. I told [petitioner] that the price of the fifteen years on the habitual cases was a guilty plea in all three. He understood the pros and cons and the deal and [petitioner] took it after several in depth discussions of the facts and the options. As I told [petitioner] then and believe today, this was a pretty good plea bargain; not great, but pretty good.

(03SHR 41-46, doc. 10-6 (citations to the record omitted)

(emphasis in original).)

Based on the documentary record, counsel's affidavit, and her own recollection of the plea proceedings, the state habeas judge entered the following factual findings relevant to the voluntary and knowing nature of petitioner's pleas:

> 28. [Petitioner] presents no evidence that [counsel] lied to him.
>
> 29. [Petitioner] acknowledged by his signature that he understood the written plea admonishments.
>
> 30. [Petitioner] acknowledged by his signature that he was aware of the consequences of his plea.
>
> 31. [Petitioner] acknowledged by his signature that he is (sic) plea was "knowingly, freely, and voluntarily" made.
>
> 32. [Petitioner] acknowledged by his signature that "[n]o one ha[d] threatened, coerced, forced, persuaded or promised" him anything for his plea.
>
> 33. [Counsel] acknowledged by his signature that he was satisfied that [petitioner] was "intelligently, knowingly, and voluntarily" waiving his rights and pleading guilty.
>
> 34. This Court personally admonished [petitioner], interacted with him, and found that his plea was "intelligently, freely and voluntarily" made.

(Id. at 87-88 (citations to the record omitted).) These findings were later adopted by the Texas Court of Criminal Appeals.

Petitioner fails to present clear and convincing evidence in rebuttal. 28 U.S.C. § 2254(e)(1). Thus, this court must apply the presumption of correctness to the state courts' findings on the issue. Having done so, petitioner's claims that counsel coerced

11

or frightened him into pleading guilty, that counsel refused to go to trial, and that his guilty pleas were the result of counsel's erroneous advice and deception are groundless. Petitioner's conclusory assertions, after the fact, are insufficient to rebut the presumption that he received effective assistance of counsel and the presumption of regularity of the state court records. *See Webster v. Estelle,* 505 F.2d 926, 929-30 (5th Cir. 1974) (holding state court records "are entitled to a presumption of regularity"). Counsel's obligation is to inform a criminal defendant of the advantages and disadvantages of a plea agreement and the attendant statutory and constitutional rights that a guilty plea would forgo. *Libretti v. United States,* 516 U.S. 29, 50-51 (1995). Often a criminal defendant, even if he is unwilling or unable to admit his guilt, will agree to plead guilty to an offense, having been so informed by counsel, in order to avoid a potentially harsher sentence by a judge or jury. Such a decision on the part of a defendant does not render counsel's representation deficient or a plea involuntary. *See North Carolina v. Alford,* 400 U.S. 25, 37 (1970); *Brady,* 397 U.S. at 749-50.

Petitioner's remaining claims are waived as a result of his knowing and voluntary guilty pleas.

For the reasons discussed herein,
The court ORDERS that the petition of petitioner for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby, denied and that a certificate of appealability be, and is hereby denied.

SIGNED January 20, 2018.

_____
JOHN MCBRYDE
UNITED STATES DISTRICT JUDGE